UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _12/19/2022_

---

DONALD A. BALL,
derivatively on behalf of
REGENERON PHARMACEUTICALS, INC.,

                          Plaintiff,

     -against-

CHARLES A. BAKER; MICHAEL S. BROWN;
JOSEPH L. GOLDSTEIN; CHRISTINE A. POON;
ARTHUR F. RYAN; LEONARD S. SCHLEIFER;
GEORGE L. SING; MARC TESSIER-LAVIGNE;
P. ROY VAGELOS; GEORGE D.
YANCOPOULOS; ROBERT TERIFAY;
MURRAY GOLDBERG; ROBERT E. LANDRY;
BONNIE L. BASSLER; N. ANTHONY COLES;
and HUDA Y. ZOGHBI,

                          Defendants.

     -and-

REGENERON PHARMACEUTICALS, INC.,

                          Nominal Defendant.

No. 21 Civ. 6418 (NSR)
OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

      Plaintiff Donald A. Ball ("Plaintiff") commenced the instant action, derivatively on behalf

of nominal defendant Regeneron Pharmaceuticals, Inc. ("Regeneron"), in the Supreme Court of

New York on June 29, 2021. Defendants Charles A. Baker, Michael S. Brown, Joseph L.

Goldstein, Christine A. Poon, Arthur F. Ryan, Leonard S. Schleifer, George L. Sing, Marc Tessier-

Lavigne, P. Roy Vagelos, George D. Yancopoulos, Robert Terifay, Murray Goldberg, Robert E.

Landry, Bonnie L. Bassler, N. Anthony Coles, and Huda Y. Zoghbi (collectively, "Defendants")

removed the action to this Court on July 28, 2021, under 28 U.S.C. §§ 1331 and 1441. (ECF Nos. 1-3.)

Presently before the Court are (1) Plaintiff's motion to remand (ECF No. 23); and (2) Defendants' motion to dismiss or, in the alternative, to stay (ECF No. 27). For the following reasons, Plaintiff's motion to remand is DENIED. Defendant's motion to stay is GRANTED.

## BACKGROUND[1]

The instant action is a shareholder derivative suit arising from the allegedly improper behavior of Regeneron. The allegations emanate from another lawsuit against Regeneron by the United States currently pending in the District Court of Massachusetts. *See United States v. Regeneron Pharms., Inc*., No. CV 20-11217-FDS, 2020 WL 7130004 (D. Mass. Dec. 4, 2020) ("DOJ action").

Regeneron, a pharmaceutical company, manufactures Eylea, a drug that treats neovascular age-related macular degeneration, or wet AMD. (Complaint" or "Compl." at 1, ECF No. 1-1.) Wet AMD is a prevalent eye disease that affects older adults. (Compl. at 26.) Eylea is administered by injection at the physician's office once a month for the first 12 doses, and about 6 to 7 times per year thereafter. (*Id*.)

Medicare, a federally funded insurance program, covers prescription drugs like Eylea. Medicare Part B covers 80 percent of Eylea's cost for beneficiaries who have met their annual deductible. The beneficiaries themselves are responsible for the remaining 20 percent, known as a copay. The copay incentivizes patients to choose the most cost-effective treatment.

Eylea has two main competitors, Avastin and Lucentis, both of which are made by Genentech. (*Id*.) All three drugs have similar efficacy but divergent prices. (Compl. at 27.) Eylea

---

[1] The following facts are as alleged in the Complaint (ECF No. 1-1) unless otherwise noted.

is priced at $1,850 per dose. (*Id*.) Lucentis costs approximately $2,000 per dose. (*Id*.) Avastin, when used off-label,[2] costs approximately $55 per dose. (*Id*.) Physicians often prescribe Avastin for patients without insurance. (*Id*.) For patients with Medicare or other insurance, Eylea and Lucentis cost less than Avastin. (*Id*.)

On June 24, 2020, the United States initiated the DOJ action against Regeneron in the U.S. District Court for the District of Massachusetts. (Compl. at 7.; *see also United States v. Regeneron Pharms., Inc*., 2020 WL 7130004.) The core allegation in the DOJ action is that Regeneron improperly covered Eylea's copay for Medicare beneficiaries through purported charitable donations, which the United States avers violated the federal Anti-Kickback Statute, 42 U.S.C. Section 1320a-7b ("AKS"), and False Claims Act, 31 U.S.C. Sections 3729 *et seq* ("FCA"). Specifically, the DOJ action alleges that Regeneron financed an "AMD fund" through a now-defunct non-profit foundation, The Chronic Disease Fund ("CDF"). 2020 WL 7130004, at *3. From 2011 through at least 2014, the AMD fund covered Eylea's copays for physicians who submitted claims to CDF. *Id*. The United States avers in the DOJ action that "Regeneron contributed tens of millions of dollars to the AMD fund" during the same period and that Regeneron "continuously communicated with CDF to ensure that it was donating enough to cover the Medicare copays of Eylea patients only." 2020 WL 7130004, at *2. Regeneron's funding of CDF allegedly "induced thousands of Medicare-reimbursed purchases of Eylea, resulting in tens of millions of dollars of Medicare claims." 2020 WL 7130004, at *5 (internal quotations omitted). On December 4, 2020, Chief Judge F. Dennis Saylor of the District of Massachusetts denied Regeneron's motion to dismiss the DOJ action pursuant to Rules 12(b)(6) and 9(b). 2020 WL 7130004, at *1.

---

[2] According to the Complaint, "off-label prescription of a drug is for a condition or use other than that for which the drug has been officially approved." (Compl. at 25, n.8.)

Plaintiff avers that Medicare has spent $11.5 billion on Eylea since 2013. (Compl. at 7.) Citing the United States' DOJ action complaint, Plaintiff maintains that before Regeneron began selling Eylea in late 2011, Regeneron internally considered a price range of $1,500 to $1,950. (Compl. at 7.) Plaintiff asserts that the individual Defendants chose the higher-end price of $1,850 knowing that Regeneron would cover patient co-pays through illicit donations to CDF, a "kickbacks" scheme which the individual Defendants understood to defy 42 U.S.C. § 1320-7b(b). (Compl. at 8.)

Plaintiff additionally alleges that "many of the Individual Defendants, including a majority of the current Board members, collectively sold over $650 million in Regeneron stock (pursuant to the exercise of stock options) during this time." (Compl. at 9.) Thus, "[t]his derivative action seeks to recover those damages for the benefit of the Company from the true wrongdoers – the officers and directors of Regeneron." (Compl. ¶ 16.)

On June 29, 2021, Plaintiff commenced the instant action in New York Supreme Court, Westchester County, alleging: (1) breach of fiduciary duty against all individual Defendants under N.Y. Bus. Corp. Law § 717 and New York common law; and (2) breach of fiduciary duty for insider stock selling under New York common law against twelve of the fifteen individual Defendants. (Compl. at 62-64.) Plaintiff's Complaint incorporates the DOJ action and alleges the same conduct by Regeneron in violation of AKS and FCA. (Compl. at 14-15). On July 28, 2021, Defendants timely removed the action to this Court. On September 23, 2021, Plaintiff moved to remand the action to state court. On September 27, 2021, Defendants moved to dismiss the Complaint for failure to state a claim or to stay the action pending the resolution of the DOJ action.

## LEGAL STANDARD

### I.   Removal

A "civil action" initially filed in state court may be removed by the defendant to the federal district court embracing the place where the state court action is pending, so long as the district court has original subject matter jurisdiction over the plaintiff's claim. *See* 28 U.S.C. § 1441; *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 271 (2d Cir. 1994). However, the removal jurisdiction of the federal courts is limited and should be "scrupulously confine[d]." *Shamrock Oil & Gas Corporation v. Sheets, et al.*, 313 U.S. 100, 109 (1941) (quotations omitted); *Noel v. J.P. Morgan Chase Bank N.A.*, 918 F. Supp. 2d 123, 125 (E.D.N.Y. 2013). "Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *James v. Gardner*, No. 04-cv-1380, 2004 WL 2624004, at *1 (E.D.N.Y. Nov. 10, 2004) (citing *In re NASDAQ Market Makers Antitrust Litig.*, 929 F. Supp. 174, 178 (S.D.N.Y. 1996)).

In removal cases, the removing party bears the burden of establishing that all jurisdictional requirements have been met. *Mehlenbacher v. Akzo Nobel Salt, Inc.*, 216 F.3d 291, 296 (2d Cir. 2000); *see also United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). Where subject matter jurisdiction is lacking, "the Court is obligated to decline removal and remand [the] case." *Newman & Cahn, LLP. v. Sharp*, 388 F. Supp. 2d 115, 117 (E.D.N.Y. 2005); *see also* 28 U.S.C. § 1447(c); *United Food & Commercial Workers Union, Local 919*, 30 F.3d at 301.

### II.   Stay

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for

5

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). "Although a court 'is obligated to exercise its jurisdiction over cases before it, and to guide those cases toward as speedy and inexpensive a conclusion as is consistent with permitting claims to be heard fairly,' it has the discretion to grant a stay 'when a similar action is pending in another court.'" *Estate of Heiser v. Deutsche Bank Trust Co. Ams.*, No. 11 CIV. 1608, 2012 WL 5039065, at *5 (S.D.N.Y. Oct. 17, 2012) (quoting *LaSala v. Needham & Co., Inc.*, 399 F. Supp. 2d 421, 427 n.39 (S.D.N.Y. 2005)); *see also SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d 444, 455 (S.D.N.Y. 2003) (stay of federal action is appropriate "in light of a concurrently pending federal action ... either because the claim arises from the same nucleus of facts or because the pending action would resolve a controlling point of law[.]").

Courts balance the following factors in deciding whether to grant a stay:

(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest.

*Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996) (quotation omitted). The movant "bears the burden of establishing its need" for such a stay. *Luv N' Care, Ltd. v. Regent Baby Prod. Corp.*, No. 10 CIV. 9492, 2014 WL 572524, at *2 (S.D.N.Y. Feb. 13, 2014) (quoting *Clinton v. Jones*, 520 U.S. 681, 708 (1997)).

## DISCUSSION

### I.   Subject Matter Jurisdiction

Plaintiff moves to remand this action to the New York state court, averring that such a derivative action does not arise under the laws of the United States pursuant to 28 U.S.C. § 1331. Plaintiff argues that "New York state law alone – not federal law – defines the fiduciary relationship between a New York corporation, its directors and officers," and thus, derivative

6

claims for breach of fiduciary duty "ultimately remain creature[s] of New York law." (Pl. Remand Mem. at 7, ECF No. 24.)  Defendants, who bear the burden of establishing federal jurisdiction, argue that the instant action satisfies the four-part standard articulated by *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, namely, the underlying federal issues are "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." 545 U.S. 308, 314 (2005). Upon close examination of precedents, the Court determines that, at the current procedural posture, this action warrants federal jurisdiction.

As a threshold matter, Plaintiff mischaracterizes the applicable standard for a remand motion. (Pl. Remand Reply Mem. at 7, ECF No. 41.) The Second Circuit "resolve[s] any doubts against removability" in construing statutory procedures for removals. *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir.2007) (citing *Syngenta Crop Prot., Inc. v. Henson,* 537 U.S. 28, 32 (2002)); *see also Allstate Ins. Co. v. CitiMortgage, Inc.*, No. 11 CIV. 1927 RJS, 2012 WL 967582, at *2 (S.D.N.Y. Mar. 13, 2012). This language does not translate into a requirement that "to defeat the Remand Motion, [Defendants] must establish beyond *any doubt* that there is a substantial federal interest in Plaintiff's New York state law claims" as Plaintiff asserts in his reply. (Pl. Remand Reply Mem. at 7.) (Emphasis in original.)

Under 28 U.S.C. § 1331, federal district courts have subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." Absent a federal cause of action, federal subject matter jurisdiction nonetheless "extends to a special and small category of cases brought under state law that implicate a federal issue." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 140–41 (2d Cir. 2021) (citing *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 699 (2006)). The Second Circuit applies the four-factor *Grable-Gunn*

test to determine whether a state law claim warrants the exercise of federal jurisdiction: "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Tantaros*, 12 F.4th at 141 (internal citation omitted.) "The *Grable-Gunn* test reflects the commonsense notion that a federal court ought to be able to hear" state law claims that "turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id*.

### A. Necessarily Raised

Applying the first factor *Grable-Gunn* test to the case at bar, the Court determines that Plaintiff's state law claims necessarily raise a question of federal law. This prong is satisfied "where the plaintiff's right to relief necessarily depends on resolution of a question of federal law," and "federal jurisdiction exists if a court must apply federal law to the plaintiff's claim in order to decide the case." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 141 (internal citations and footnotes omitted). The Complaint makes clear that Defendants' alleged conduct breached their fiduciary duty under New York law only if such conduct violated the federal AKS and FCA, which necessarily raises questions of federal law. Thus, the first *Grable-Gunn* element is met.

### B. Actually Disputed

The federal issues in this case are also actually disputed. Regeneron's alleged violation of AKS and FCA is "the central point of dispute" in both the instant action and the DOJ action on which Plaintiff's Complaint extensively relies. At bar is "just the sort of dispute respecting the effect of federal law that *Grable* envisioned." *Gunn v. Minton*, 568 U.S. 251, 259 (2013). Accordingly, the second *Grable-Gunn* element is met.

## C.  Substantial

The parties vigorously contest the substantiality of the federal issues in the instant case. After due consideration, the Court concludes that the underlying federal interests are substantial and justify federal jurisdiction.

As both parties note, the Second Circuit addressed the substantiality prong of the *Grable-Gunn* test most recently in *Tantaros*, stating "[t]he issue of federal law must also be substantial— that is, important not solely to the parties in the immediate case but also to 'the federal system as a whole.' An issue *tends to* be substantial if it is a nearly pure issue of law, one that could be settled once and for all and thereafter would govern numerous [similar] cases.'"[3] 12 F.4th 135, 145 (citing *Gunn*, 568 U.S. at 260) (emphasis added and footnotes omitted). The Court agrees with Plaintiff that the instant federal question is not "a purely legal one" as that in *Tantaros*. *See id.* Yet, Plaintiff's advocacy again takes a step further than what the case law prescribes: Neither *Tantaros* nor the Supreme Court's *Empire Healthchoice Assur., Inc. v. McVeigh*—as Plaintiff zealously but erroneously asserts—makes "a nearly pure issue of law" a prerequisite to the third prong of *Grable-Dunn* test. 547 U.S. 677, 700–01 (2006).[4]  *Tantaros* presented "a purely legal" question. 12 F.4th at 146. *Grable* presented "a *nearly* pure issue of law." *Empire Healthchoice Assur., Inc.*, 547 U.S. at 700–01 (emphasis added). The question at bar is where this case falls on the spectrum of "the kaleidoscopic situations" that request federal jurisdiction. *Grable & Sons Metal Prod., Inc.*, 545 U.S. at 313 (citing *Gully v. First Nat. Bank in Meridian*, 299 U.S. 109, 117–118 (1936)*.*)

---

[3] In the same paragraph, the Second Circuit continues to note that: "The Supreme Court and this court have found a significant federal interest in the interpretation of a federal law, such as in disputes over the meaning of a federal tax law, the scope of an Internal Revenue Code regulation, and the duties imposed by the Securities Exchange Act." *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 146 (2d Cir. 2021)

[4] Similarly, "novelty" and "unusualness" are not prerequisites to the substantiality prong of the *Grable-Dunn* test, but merely favorable factors. (Pl. Remand Reply Mem. at 12, ECF No. 41.) *See In re Standard & Poor's Rating Agency Litig.*, 23 F. Supp. 3d 378, 407 (S.D.N.Y. 2014).

The Court is of the view that the instant dispute espouses "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Prod., Inc.*, 545 U.S. at 313. First, the DOJ action suggests that the resolution of Regeneron's liability implicates the interpretation of "the guidance from the Office of the Inspector General for the Department of Health and Human Services ('HHS-OIG'), the agency that administers Medicare, have established," namely a "special [HHS-OIG] advisory bulletin addressing how companies may contribute to copay-assistance programs without violating the AKS and FCA." *United States v. Regeneron Pharms., Inc.*, 2020 WL 7130004, at *8. The arguments made by Regeneron in the DOJ action further evince a strong likelihood that the DOJ action will implicate the interpretation of FCA itself. *See, e.g., United States v. Regeneron Pharms., Inc.*, 2020 WL 7130004, at *14. Thus, the extent to which the underlying federal issues "involve aspects of the complex federal regulatory scheme" is at least as significant as in *Broder v. Cablevision Sys. Corp.*, where the Second Circuit affirmed jurisdiction. 418 F.3d 187, 195 (2d Cir. 2005); *see also New York City Health & Hosps. Corp.* v. *WellCare of New York, Inc.*, 769 F. Supp. 2d 250, 257 (S.D.N.Y. 2011) (federal jurisdiction exists as "the case implicates the complex reimbursement schemes created by Medicare law").

Second, the federal interest in the uniform application of federal law governing the Medicare program is paramount. Regeneron's alleged conduct generated multiple similar lawsuits implicating the same federal statutes pending in federal courts. *See, e.g., United States v. Regeneron Pharms., Inc.*, No. CV 20-11217-FDS, 2020 WL 7130004 (D. Mass. Dec. 4, 2020); *Humana, Inc. v. Regeneron Pharmaceuticals, Inc.*, No. 21 CV 6245 (VB) (S.D.N.Y. July 22, 2021); *UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, No. 20 CV 10664 (VB), 2021 WL 6137097,

(S.D.N.Y. Dec. 29, 2021).[5] "[M]inimizing uncertainty over" the Medicare law and regulatory scheme "fully justifies resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d 308, 318 (2d Cir. 2016) (citing *Grable*, 545 U.S. at 312).

Accordingly, the third *Grable-Gunn* element is met.

### D.  Federal-state Balance

As to the fourth and final *Grable-Dunn* factor, the Court concludes that this case can be resolved in federal court without disrupting the "congressionally approved balance of state and federal judicial responsibilities, defined by 'the nature of the claim, the traditional forum for such a claim, and the volume of cases that would be affected.'" *Tantaros v. Fox News Network, LLC*, 12 F.4th 135, 146 (2d Cir. 2021) (citing *New York ex rel. Jacobson v. Wells Fargo Nat'l Bank, N.A.*, 824 F.3d at 316). "Absent a special state interest in a category of litigation . . . federal questions that implicate substantial federal interests sensibly belong in a federal court." *Tantaros*, 12 F.4th at 146 (internal quotations and footnote omitted).

Federal adjudication of this case poses no threat to the federal-state balance. While New York law creates the fiduciary duty Defendants owe to Plaintiff, underneath the state law raiment is a dispute of federal nature, implicating federal statutes, federal regulatory schemes, and federal spending. The Court acknowledges that the New York state has a competing interest in adjudicating shareholder derivative actions created by its own laws. Nevertheless, the multifaceted federal interests in the instant case outweigh such state consideration at least until the resolution

---

[5] Plaintiff asserts that removal is inappropriate because Judge Briccetti refused to accept the instant case as related to the pending *UnitedHealthcare Ins. Co. v. Regeneron Pharms., Inc.*, No. 20 CV 10664 (VB) and *Humana, Inc. v. Regeneron Pharmaceuticals, Inc.*, No. 21 CV 6245 (VB) under Local Rule 13. (Pl. Remand. Mem. at 2., ECF No. 24.) This argument is misplaced. Judge Briccetti's decision to decline the assignment of this case has no bearing on the issue of federal jurisdiction.

of the DOJ action.

Plaintiff would have this Court adopt a rule that all shareholder derivative suits categorically belong in state court. Such a bright-line rule defies nearly a century of federal arising-under-jurisdiction jurisprudence. Each request for federal jurisdiction involves "a welter of issues regarding the interrelation of federal and state authority and the proper management of the federal judicial system," from which the court must "pick the substantial causes out of the web and lay the other ones aside." *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 8 (1983); *Gully v. First Nat. Bank*, 299 U.S. 109, 117 (1936) (Cardozo, J.) Through the preceding "selective process," *id.* at 117, the Court determines that all four *Grable-Gunn* elements are met and accordingly denies Plaintiff's motion to remand.

## II.   Stay

Defendants seek to stay the instant action pending resolution of the more advanced DOJ action. (ECF No. 28.) Plaintiff opposes, averring that the DOJ action will not resolve or dispose of this case. (ECF No. 35.)  Guided by the *Kappel* factors, the Court concludes that a stay is warranted. 914 F. Supp. at 1058.

First, the Court finds that the interests of the parties are best served by staying the case, which outweighs the resulting prejudice to Plaintiff. The instant action arises from "the same nucleus of facts" as the DOJ action. *Cf. SST Glob. Tech., LLC v. Chapman*, 270 F. Supp. 2d at 455. For Plaintiff to prevail on his Complaint, in which he expressly and extensively cites the DOJ Complaint, Plaintiff must prove the same allegations as the DOJ action contests, namely whether Regeneron's conduct violated AKS and FCA. The resolution of the DOJ action will thus substantially simplify the instant case for both Regeneron and Plaintiff. Indeed, the resolution of the same core federal issues will likely pivot the instant state law raiment into the center of the

dispute. At that point, the state court might become a more apposite forum for the transmuted action, consistent with Plaintiff's adeptly briefed preference.

Second, the interests of the courts are best served by a stay. Federal courts disfavor duplicative litigation. *See Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) ("As part of its general power to administer its docket, a district court may stay . . . a suit that is duplicative of another federal court suit."); *see also Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817 (1976) ("As between federal district courts, ... though no precise rule has evolved, the general principle is to avoid duplicative litigation.") Without staying the case at bar, this Court's adjudication of AKS and FCA issues inevitably risks inconsistent rulings against the District Court of Massachusetts. Considering the significant overlap between this action and the DOJ action, a stay here "best serve[s] the interests of the courts by promoting judicial efficiency and minimizing the possibility of conflicts between different courts." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. U.S. E.P.A.*, 630 F. Supp. 2d 295, 304 (S.D.N.Y. 2009) (citation and internal quotations omitted).

Third, a stay best serves the interests of the public and that of any non-party individuals. As our learned colleague points out in staying both *UnitedHealthcare Ins. Co. v. Regeneron Pharms.* and *Humana, Inc. v. Regeneron Pharmaceuticals, Inc.*, the DOJ action "represents the public interest" as "a civil enforcement proceeding brought by the government." 2021 WL 6137097, at *5. The public interest is further served by judicial consistency and efficiency. *See id; Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n*, 356 F. Supp. 3d 287, 299 (S.D.N.Y. 2018) ("[T]he public interest in prompt adjudication is counterbalanced by its interest in conserving judicial resources . . .") As such, all *Kappel* factors counsel in favor of a stay. 914 F. Supp. at 1058. Accordingly, the Court grants Defendants' motion to stay.

**CONCLUSION**

For the foregoing reasons, Plaintiff's motion to remand is DENIED without prejudice. Defendants' motion to stay is GRANTED.

All proceedings in the instant action are STAYED pending further order from this Court. Defendants shall notify the Court within ten days of the resolution of the DOJ action. Defendants' motions to dismiss are TERMINATED without prejudice to renew upon conclusion of the stay.

The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 23 and 27.

Dated: December 19, 2022

White Plains, NY

SO ORDERED:

HON. NELSON S. ROMAN
UNITED STATES DISTRICT JUDGE